IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KIYOMI CURRY                                                                          PLAINTIFF

V.                          Civil No. 2:21-cv-02208-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                        DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Kiyomi Curry ("Curry"), brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background**

Curry protectively filed her applications for DIB and SSI on March 6, 2018, alleging disability since February 17, 2018, due to botched left foot surgery; herniated, bulging, and ruptured disks in her back; bilateral planter fasciitis; degenerative disk disease ("DDD") in her spine; bilateral carpal tunnel syndrome ("CTS"); arthritis in both knees; depression; anxiety; and hypercholesterolemia. (ECF No. 11, pp. 119, 136-137, 170, 185, 351-363, 383, 401-402). The Commissioner denied her applications initially and on reconsideration, and an administrative hearing was held on February 20, 2020. (*Id*. at 89-113). Curry was present for the hearing and represented by counsel.

On her alleged onset date, Curry was 44 years old and possessed a high school education with one year of college. (ECF No. 11, pp. 93-94, 351). She had past relevant work ("PRW") experience as a time or work checker, cashier, machine operator, housekeeper, and van driver. (*Id*. at 81, 384-385, 393-400).

On April 14, 2020, Administrative Law Judge ("ALJ"), Bill Jones, issued an unfavorable decision, concluding that her disorder of the spine, bilateral knee osteoarthritis, left foot plantar fasciitis status post plantar fasciotomy, and bilateral carpal tunnel status post release were severe impairments, but finding that her depression and anxiety were not severe. (ECF No. 11, p. 69). He found that Curry did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 71). Despite her impairments, ALJ Jones determined she retained the residual functional capacity ("RFC") to perform light work, with the occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling, and overhead reaching bilaterally, and no climbing of ladders, ropes, or scaffolds. (*Id*. at 72). With the assistance of a vocational expert ("VE"), the ALJ ultimately decided Curry could return to her PRW as a time or work checker. (*Id*. at 81).

On November 19, 2021, the Appeals Council denied Curry's request for review (ECF No. 11, pp. 7-11), and she subsequently filed her Complaint to initiate this action. (ECF No. 2). Both parties have filed appeal briefs (ECF Nos. 12, 14), and the matter is ripe for resolution. The case has been referred to the undersigned for Report and Recommendation.

## II. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial

evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A claimant must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

3

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder will only consider a claimant's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

Curry has raised three issues on appeal: (1) whether the ALJ properly found her mental impairments to be non-severe impairments; (2) whether the ALJ's RFC is supported by substantial evidence; and (3), whether she can return to her PRW, as found by the ALJ. After reviewing the record, the undersigned agrees that the ALJ failed to properly consider Plaintiff's mental impairments, thereby tainting the remainder of his sequential analysis.

At Step Two, a claimant has the burden of providing evidence of functional limitations in support of their contention of disability. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id*. (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)). A step two finding of a non-severe impairment does not, however, end the ALJ's duty to consider the impairment. When a Plaintiff has multiple impairments, the ALJ is required to consider the combined effect of those impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 CFR § 404.1523.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. The ALJ's RFC determination must be based on all relevant evidence in the record, including medical records, observations of treating physicians and others, limitations resulting from factors such as pain, and the claimant's own descriptions of her limitations. *Id*. §§ 404.1545(a)(3), 416.945(a)(3); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) and *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). In assessing RFC, the ALJ must consider limitations resulting from all an individual's impairments, even those found to be non-severe. *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, (S.S.A. 1996) 1996 WL 37418, *5. Although a non-severe impairment, standing alone, may not significantly limit an individual's ability to do basic work activities, when considered with other impairments, it may well be critical to the outcome of the case. *Id*.

At the outset, we note that physical pain is a known cause of depression. *See* Mayo Foundation for Medical Education and Research, *Pain and Depression: Is There a Link?*, *at* https://www.mayoclinic.org/diseases-conditions/depression/expert-answers/pain-and-depression/faq-20057823 (last accessed June 22, 2023). Less known, though no less significant, is the fact that depression can also cause physical symptoms, including back pain and headaches. *Id*. This can result in a vicious cycle in which severe pain intensifies an individual's depressive symptoms and their depression, in turn, further exacerbates that pain. *Id*. To control this cycle, separate treatment for each condition is often necessary, although some treatment regimens, such as antidepressants and therapy, may help with both. *Id*.

In the present case, Curry has an extensive history of bilateral plantar fasciitis, status post two unsuccessful surgeries; DDD in her spine with herniated, bulging, and ruptured disks; bilateral carpal tunnel syndrome ("CTS"), status post-surgical correction; and arthritis in both knees. An

MRI of her cervical spine performed in March 2021 showed spondylosis from the C3-4 to C6-7 levels with multilevel spinal canal stenosis and neural foraminal narrowing, most prominently at the C5-6 level. (ECF No. 11, pp. 27-28). As a result, she has received extensive pain management in the form of narcotic pain medication, physical therapy, cervical epidural steroid injections ("CESI"), lumbar medial branch blocks ("LMBB"), and facet rhizotomies that, unfortunately, failed to provide her with any long-term pain relief. (*Id*. at 14, 31-44, 127-132, 196-201, 477-478, 484-495, 511-518, 533-543, 548-554, 557-560, 565-570; ECF No. 11-1, pp. 3-13, 15-24, 31-33, 39-50, 59-60, 74-86, 109-111, 155-159, 179, 185-208, 215-225, 245-272, 287-288, 303-305, 371-405, 430-432, 451, 499-505; ECF No. 11-2, pp. 1-35, 441-490; ECF No. 11-3, pp. 67-114, 140-194, 273-298; ECF No. 11-4, pp. 9-13, 15-19, 69-72, 83-96, 99-107, 113-126). Further, in June 2021, Curry was diagnosed with ductal carcinoma in situ of the left breast and underwent radiation therapy. (ECF No. 11, pp. 37-38).

In September 2021, Dr. Ornette Gaines completed the written certification necessary for her to obtain a medical marijuana card, on which she indicted Curry suffered from intractable pain that had not responded to ordinary medications, treatment, or surgical measures for more than six months. (ECF No. 11, pp. 17-18).

Evidence dating back to at least 2016 documents the link between Curry's pain and her depression and anxiety. (ECF No. 11-1, pp. 84-86, 186-187; ECF No. 11-4, pp. 31-33). In addition to referring her to pain management, nurse practitioner Marie Pham-Russell noted her to be anxious, highly irritable, emotionally liable, and depressed. She was prescribed Effexor XR and Doxepin.

In July 2017, Curry again expressed difficulty with anxiety, emotionality, depression, and sleep disturbance that coincided with a tailbone injury sustained during physical therapy. (ECF No. 11-1, pp. 74-75, 155-156; ECF No. 11-4, pp. 20-21). Her medications were continued.

The ALJ is correct in his assertion that Curry did not begin formal mental health treatment until 2019. In April 2019, emergency physician, Dr. Chiricka Orisakwe referred her to behavioral health. (ECF No. 11-4, pp. 69-70). And she underwent her first evaluation at The Guidance Center in May 2019. (*Id*. at 129-141). Noting her not to be functioning very well, the examiner diagnosed her with major depressive disorder and post-traumatic stress disorder, and recommended therapy once or twice per month.

On May 7, 2019, family practitioner, Dr. Hannah Eveld, prescribed Effexor XR and Cymbalta. (ECF No. 11-4, pp. 71-72). Later that month, due to persistent symptoms, Dr. Eveld increased Curry's Effexor dosage; recommended she speak to Dr. Gaines about Lyrica; and referred her back to pain specialist, Dr. Brian Goodman, for additional injections. (*Id*. at 76-77).

On June 4, 2019, Curry returned for individual therapy. (ECF No. 11-4, pp. 147-150). She was upset and confused about where to turn regarding her pain. Clay Connelly, a licensed professional counselor, noted her mood to be anxious, her affect constricted, and her thought processes circumstantial.

Advanced practical registered nurse, Kellie Berry-Hert, evaluated Curry on June 15, 2019. (ECF No. 11-4, pp. 142-146). She indicated that her pain was overwhelming and had dramatically reduced her quality of life, resulting in rapid mood swings. Nurse Berry-Hert noted an anxious, irritable, and depressed mood; a tearful and irritable affect; pressured speech; and easy distractibility. She prescribed Cymbalta, suspecting Curry might be suffering from bipolar disorder.

Three days later, Counselor Connelly noted an unchanged mental status exam as they began working through the underlying causes of her depression and emotional dysregulation. (ECF No. 11-4, pp. 151-154). In addition to pain, she reported trauma resulting from a sexual assault and the suicide of a past boyfriend when she was in her 20s. In July, Curry reported that her pain remained a constant issue. (*Id*. at 155-158). She did feel a bit better, allowing her to perform some work in the garden and do chair yoga. After discussing healthy ways to cope with depression that did not require physical activity, Counselor Connelly documented very limited progress toward her treatment goals. And, when she returned in August, she remained very anxious and constricted. (*Id*. at 159-162). The counselor indicated Curry was consumed by pain and lacked self-care. (*Id*. at 163-166).

On September 16, 2019, Curry seemed more at ease during her therapy session and was able to focus on identifying healthy coping skills. (ECF No. 11-4, pp. 167-170). She felt slightly better but continued to suffer with chronic pain that affected her mental status.

Despite having had a CESI five days prior, in October 2019, Curry reported increased anxiety and depression that coincided with an increase in physical pain. (ECF No. 11-4, pp. 171-174). She felt there was no hope for her chronic pain. Counselor Connelly noted her to be tearful, having made very limited progress toward her treatment goals. This persisted into November, with Curry reporting regular crying spells and feeling on edge due to significant pain. (*Id*. at 175-178).

Curry's mood improved in December 2019, as a recent CESI had provided her with some short-term pain relief. (ECF No. 11-4, pp. 179-182). While this break in her pain had enabled her to do more around the house, she was dreading the time when the injection lost its efficacy, as they often did. Due to recurrent dreams about the boyfriend she lost to suicide, Curry's symptoms returned. (*Id*. at 183-186). She was depressed and anxious with a blunted affect. And, in January

2020, Dr. Eveld increased her Cymbalta dosage. (*Id*. at 81-82). At that time, her Patient Health Questionnaire - 9 score was 20, indicating symptoms of severe depression. (*Id*. at 82).

The ALJ concluded that Curry's depression and anxiety were non-severe impairments because, for much of the review period, her treatment consisted of only medication. He also found that the waxing and waning nature of her depressive symptoms indicated that her symptoms were responsive to medication. Unfortunately, in so doing, the ALJ failed to account for the direct correlation between her physical pain and depression. The record makes clear that Curry's depression worsened in response to increased physical symptoms. And all this despite receiving and complying with the treatment prescribed to treat both her physical and mental complaints.

The ALJ also failed to include any non-exertional limitations in the RFC, to account for Curry's mental impairments. It is clear to the undersigned that both the Plaintiff's physical pain and mental symptoms would impact her ability to perform non-exertional tasks and work near others. Accordingly, we find that remand is necessary to allow the ALJ to reconsider the medical evidence documenting Curry's treatment for depression and anxiety, and to reevaluate her RFC given these findings.

On remand, the ALJ is further ordered to reconsider the evidence regarding Plaintiff's knee and feet impairments and how those impairments affect her ability to perform the walking and standing requirements of light work.

### IV.   Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of June 2023.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE